UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **SUNLESS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 3:20-cv-00930 |
| | ) | Judge Aleta A. Trauger |
| **SELBY HOLDINGS, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM & ORDER**

Sunless, Inc. has filed a Motion to Dismiss Second Counterclaim (Doc. No. 56), to which Selby Holdings, LLC ("Selby") has filed a Response (Doc. No. 62), and Sunless, Inc. has filed a Reply (Doc. No. 63). For the reasons set out herein, the motion will be denied.

## I. BACKGROUND[1]

"The sunless tanning industry sells cosmetology products that purportedly offer the look of a suntan without the health risks associated with prolonged sun exposure." *Sun Style Int'l, LLC v. Sunless, Inc.*, No. 1:12-CV-00179, 2013 WL 3967923, at *1 (W.D. Ky. Aug. 1, 2013). One method for achieving that result is to receive a so-called "spray tan" in an automated "booth"— that is to say, a "large machine[] in which a solution of sunless tanning liquid is sprayed onto a user who is standing in the machine." (Doc. No. 52 ¶¶ 11–12.) Such booths, which can be found in many commercial tanning salons, employ "spray nozzles, which are typically carried by moveable arms [that] move vertically along a pre-programmed" pattern of movement in order to fully and evenly coat the user's body. (*Id.* ¶ 13.) Given the complexity of such machines, they can

---

[1] Except where otherwise indicated, the facts set forth are taken from the First Amended Complaint (Doc. No. 23) and First Amended Counterclaim (Doc. No. 52). The allegations in support of the counterclaim are accepted as true for the purposes of the Motion to Dismiss.

take years to design, and, when a model finally reaches the market, the price for one is typically steep. (*Id.* ¶ 17.)

Sunless, Inc. is an Ohio-based Delaware corporation that owns "three well-known spray tan brands": Mystic Tan, Norvell, and VersaSpa. (Doc. No. 23 ¶¶ 1–2.) Sunless, Inc. holds two patents relevant to this case, U.S. Patent No. 7,297,211 ("'211 patent") and U.S. Patent No. 7,387,684 ("'684 patent"), each of which involves the application of liquids to the human body—that is to say, mechanisms for applying tanning spray. Sunless, Inc. uses those patent-protected technologies in the tanning booths it sells. (*Id.* ¶¶ 9–11.)

Selby is a Tennessee company that began selling spray tanning booths in competition with Sunless in 2019. (Doc. No. 52 ¶¶ 1, 30.) According to Selby, there are "no other companies" aside from Sunless, Inc. and Selby in the field of "manufactur[ing] . . . automated sunless tanning booths for sale to customers in the United States." (*Id.* ¶¶ 18–19.) Sunless, Inc. is a great deal larger than Selby—so much larger, in fact, that, despite Selby's entry into the market a few years ago, Sunless, Inc. still boasts a U.S. market share "approaching 100%." (*Id.* ¶ 22.) It attained that dominant market position through a combination of (1) merging with or acquiring competitors and (2) effectively forcing competitors out of the market with claims of patent infringement. (*Id.* ¶¶ 26–30.)

On October 29, 2020, Sunless, Inc. filed a patent infringement Complaint against Selby (Doc. No. 1), which was followed by a First Amended Complaint (Doc. No. 23). The First Amended Complaint pleads four causes of action—one for direct infringement of the '211 patent, one for indirect infringement of the '211 patent, one for direct infringement of the '684 patent, and one for indirect infringement of the '684 patent. (*Id.* ¶¶ 23–80.) The court dismissed a portion of Sunless, Inc.'s request for damages (Doc. No. 33), but those claims otherwise remain pending.

On August 24, 2021, Selby filed an Answer to First Amended Complaint and Counterclaim (Doc. No. 34), followed by the "First Amended Counterclaim." (Doc. No. 52.) Selby's counterclaims—of which there are two—focus not on the patent dispute that first precipitated this conflict, but, rather, actions surrounding the parties' respective trademarks. Selby holds a U.S. trademark registration for the mark SHEERSUNLESS, to be used in connection with "tanning booths." (*Id.* ¶ 3.) Selby explains that it and other companies in the tanning field use the word "sunless" as a descriptive term to indicate that a particular tanning booth "do[es] not use ultraviolet radiation," not to imply any connection to Sunless, Inc. (*Id.* ¶ 15.) Sunless, Inc. uses a few different trademarks, including ones related to the more specific brands it owns and operates (e.g., VERSASPA and NORVELL), but the Sunless, Inc. trademarks relevant to this case are SUNLESSINC and the truncated SUNLESS, which are not registered. (*Id.* ¶¶ 29, 38.)

"[T]rademark rights stem from use, not registration," *JBLU, Inc. v. United States*, 813 F.3d 1377, 1381 (Fed. Cir. 2016) (citations omitted), and, as such, the user of a mark may have rights, despite not having registered the mark—and indeed may even have priority over another party that did register the mark or one similar to it. A party that believes that it has use-based trademark rights superior to a registrant can file a petition pursuant to Section 1064 of the Lanham Act, which allows "any person who believes that he is or will be damaged" by a registration to file "[a] petition to cancel" that registration. 15 U.S.C. § 1064; *see NetJets Inc. v. IntelliJet Grp., LLC*, 678 F. App'x 343, 347 (6th Cir. 2017) (explaining cancellation process). On October 29, 2020, the very day that this suit was filed, Sunless, Inc. filed a Petition for Cancellation with the Trademark Trial & Appeal Board ("TTAB") of the U.S. Patent & Trademark Office ("USPTO"), asking that agency to cancel Selby's SHEERSUNLESS registration on the ground that Selby's use of that mark would be likely to cause confusion with Sunless, Inc.'s unregistered SUNLESS mark. (Doc. No. 52 ¶¶ 36, 38.)

3

Sunless, Inc.'s petition also alleges that Selby (1) committed fraud on the PTO and (2) improperly sought registration of "sunless," a purely descriptive term. (Doc. No. 52-7 at 1.) "Fraud," in the context of trademark registration, typically involves either an applicant's lying in support of its application or the applicant's engaging in some kind of "willful withholding from the Patent and Trademark Office . . . of material information or facts which, if disclosed to the Office, would have resulted in the disallowance of the registration sought or to be maintained." *Smith Int'l, Inc. v. Olin Corp.*, 209 U.S.P.Q. 1033, at *7 (T.T.A.B. Jan. 23, 1981). The alleged fraud underlying Selby's registration was its failure to disclose Sunless, Inc.'s superior rights—making the second ground for cancellation, in large part, a reiteration of Sunless, Inc.'s first alleged ground for cancellation. (Doc. No. 52 ¶ 63.)

Selby alleges that Sunless, Inc.'s cancellation petition is "objectively baseless." (Doc. No. 52 ¶ 39.) Selby notes that, in 2011, Sunless, Inc. tried to obtain its own registration for the SUNLESSINC mark, but the USPTO rejected its application on the ground that the term "sunless" was merely a description of the type of tanning involved. (*Id.* ¶ 41.) In a number of other instances, the USPTO did approve trademark registrations for word marks *including* the word "sunless," but, according to Selby, the agency, "[i]n most cases," required the registrant to disclaim any rights to the word "sunless" in isolation, due to the term's descriptive nature. (*Id.* ¶ 47.)

Selby argues that the USPTO's rejection of Sunless, Inc.'s attempted registration and the USPTO's required disclaimers of rights by other registrants—as well as simply Sunless, Inc.'s knowledge of the ordinary use of the word "sunless"—should have made it clear to Sunless, Inc. that it has no rights under the Lanham Act to expect any other company to refrain from using the word "sunless" in its name/word mark. *See Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1565 n.1 (Fed. Cir. 1987) ("Third-party registrations are admissible and competent to negate

4

a claim of exclusive rights in [a word] and the disclaimers are evidence, albeit not conclusive, of descriptiveness of the term.") (citations omitted). Selby also takes issue with Sunless, Inc.'s behavior in the USPTO proceedings, particularly its "stonewall[ing]" of discovery and its requests for irrelevant information about Selby's operations, finances, and business relationships. (Doc. No. 52 ¶¶ 89, 92.) Selby points out that, as a much smaller and newer company still trying to find a competitive foothold in the market already dominated by Sunless, Inc., Selby is particularly vulnerable to the drag of accumulated litigation expenses, whereas Sunless, Inc. is likely to be able to weather the costs of litigation—even litigation that it is destined to lose—far longer, if not indefinitely. (*Id.* ¶¶ 88–92.)

The First Amended Counterclaim states two causes of action. The first is for a declaratory judgment recognizing the validity of Selby's SHEERSUNLESS mark and decreeing pursuant to 15 U.S.C. § 1119 that the USPTO should maintain the registration of the mark. (*Id.* ¶¶ 73–83.) Sunless, Inc. is not currently challenging the sufficiency of Selby's pleading of that cause of action. The second cause of action, which Sunless, Inc. does challenge in the motion currently under consideration, is for attempted monopolization under the Sherman Act, 15 U.S.C. § 2. (*Id.* ¶¶ 84–107.) Selby asserts that Sunless, Inc.'s still-pending attempt to cancel Selby's registration is an "objectively baseless" attempt "to drive [Selby] from the" sunless tanning booth market, in violation of antitrust laws. (*Id.* ¶¶ 86, 91.)

## II. LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal

Rules of Civil Procedure require only that the plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

### III. ANALYSIS

In order to establish "a claim of attempted monopolization, . . . a plaintiff must prove (1) specific intent to monopolize, (2) anticompetitive conduct, and (3) a dangerous probability of success in achieving monopoly power*." Partner & Partner, Inc. v. ExxonMobil Oil Corp.*, 326 F. App'x 892, 898–99 (6th Cir. 2009) (citing *Tarrant Serv. Agency, Inc. v. Am. Standard, Inc.*, 12 F.3d 609, 615 (6th Cir.1993)); *accord Truss v. Nationwide Mut. Fire Ins. Co.*, No. 17-CV-1188, 2018 WL 2717280, at *4 (N.D. Ohio June 6, 2018). Selby asserts that it can satisfy those elements by showing that Sunless, Inc., which already enjoys a near-monopoly in the market for sunless spray tanning booths, attempted to enhance and cement that status by improperly subjecting Selby

6

to frivolous, expensive proceedings against its trademark registration. Sunless, Inc. responds by arguing that Selby's claim is barred by what is commonly referred to as the *Noerr-Pennington* doctrine, in reference to the cases of *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965). Under that doctrine, "defendants are immune from antitrust liability for engaging in conduct (including litigation) aimed at influencing decisionmaking by the government." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014) (citing *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993)).

*Noerr-Pennington* immunity is intended to reflect "the principle that the antitrust laws regulate business, not politics" or the judicial process. *VIBO Corp. v. Conway*, 669 F.3d 675, 684 (6th Cir. 2012) (quoting *City of Columbia v. Omni Outdoor Advert.*, Inc., 499 U.S. 365, 383 (1991)). To that end, "'[w]here a restraint upon trade or monopolization is the result of valid governmental action, as opposed to private action,' those urging the governmental action enjoy absolute immunity from antitrust liability for the anticompetitive restraint." *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988) (quoting *Noerr*, 365 U.S. at 136). The key word in that rule, at least as far as this case is concerned, is "valid." A company that tries to stymie its competitors with a lawsuit or other petition for government action that it knows is wholly frivolous receives no protection from *Noerr-Pennington*. See *EQMD, Inc. v. Farm Bureau Gen. Ins. Co. of Mich.*, No. 19-13698, 2021 WL 843145, at *5 (E.D. Mich. Mar. 5, 2021) (discussing "sham exception" to *Noerr-Pennington*).

Sunless, Inc. argues that, even if one thinks it is unlikely to succeed before the TTAB, its petition was not objectively baseless and therefore cannot form the basis of a Sherman Act claim. Selby responds that Sunless, Inc.'s petition is, in fact, baseless, because it is entirely reliant on the

7

legally unsupportable contention that Sunless, Inc. has a right to police other companies' use of the word "sunless," which is simply an ordinary adjective that describes a type of tanning, not a protectable mark or even a protectable element of a mark. Ultimately, "whether a party's conduct is a genuine attempt to avail itself of the judicial [or administrative] process or is merely a sham is a question of fact," *Scooter Store, Inc. v. SpinLife.com, LLC*, 777 F. Supp. 2d 1102, 1115 (S.D. Ohio 2011), at least in part, because it involves evaluating the facts underlying the allegedly sham litigation as well as the party's motivations. Whether any underlying legal theory is baseless, however, is inherently a question of law. *See J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 308 (N.D. Ohio 2021). The court accordingly must evaluate both the facts that Selby has pleaded regarding Sunless, Inc.'s petition and the legal foundations on which that petition rests.

In order to be a protectable trademark, a mark must be capable of signaling the origin of a good or service, and, in order to do that, the mark "must be distinctive." *Papa Ads, LLC v. Gatehouse Media, Inc.*, 485 F. App'x 53, 55 (6th Cir. 2012) (citing *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 635 (6th Cir. 2002)). As the Supreme Court has noted, "[m]arks are often classified in categories of generally increasing distinctiveness; following the classic formulation . . . , they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2nd Cir. 1976)). The latter three categories are considered inherently distinctive and are entitled to protection without showing any additional "acquired distinctiveness" arising out of the relevant mark's real-world use. *Id.* The term "sunless," however, is not arbitrary, fanciful, or merely suggestive. Sunless tanning *actually is* tanning that does not rely on the sun. The term, therefore, must be either descriptive or generic.

"[G]eneric marks are never protected under the Lanham Act." *Curcio Webb LLC, v. Nat'l Benefit Programs Agency, Inc.*, 367 F. Supp. 2d 1191, 1208 (S.D. Ohio 2005) (citation omitted); *see also Two Pesos*, 505 U.S. at 768 ("[G]eneric marks . . . are not registrable as trademarks."). Descriptive marks, however, may become registrable and protectable, despite their lack of *inherent* distinctiveness, if they have acquired a "secondary meaning" through their actual use in commerce. *Two Pesos*, 505 U.S. at 769. Secondary meaning occurs when "it can be determined that the attitude of the consuming public toward the mark denotes a single thing coming from a single source." *Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 596 (6th Cir. 1989) (internal quotation marks and citation omitted). Thus, a descriptive mark has acquired secondary meaning when it has "becom[e] distinctive of the [user's] goods." *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1117 (6th Cir. 1996) (quoting *Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir. 1984)).

For example, the Sixth Circuit has identified "BEST, SUPERIOR, and PREFERRED" as marks that, though lacking any inherent distinctiveness, may become protectable through distinctiveness acquired from their use over time by a particular purveyor. *Id.* at 1117 (citing J. Thomas McCarthy, McCarthy's Desk Encyclopedia of Intellectual Property 93 (1991)). Other commonly cited examples of descriptive terms include "5 minute glue" for glue that dries in five minutes and, particularly relevant to this case, "After Tan post-tanning lotion" for lotion that one uses after one tans. *Passport Health, LLC v. Avance Health Sys., Inc.*, 823 F. App'x 141, 148 (4th Cir. 2020) (citing *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 661 (4th Cir. 2018)).

It may be the case that "sunless" is a descriptive term that acquired some protectable quotient of distinctiveness through Sunless, Inc.'s use of it. Selby, however, has plausibly pleaded that such a conclusion would be objectively baseless and that "sunless" is either an unprotectable

9

generic term or a descriptive term used so widely that Sunless, Inc.'s use of it plainly has not, as a matter of actual fact, given it secondary meaning. Selby's allegations are not conclusory, but are, rather, supported by numerous assertions of fact. For example, Selby alleges that Sunless, Inc. "has never challenged any of the numerous companies using the term 'sunless' in their product and business names and . . . repeatedly uses the term "sunless" in a descriptive sense, even defining the term in a glossary on its websites . . . ." (Doc. No. 52 ¶ 53.) Selby points out that even the patents at issue in this case themselves use the term in that descriptive sense, as does the U.S. Food & Drug Administration. (*Id.* ¶¶ 44, 50.) Selby cites Sunless, Inc. marketing materials in which the company refers to itself as the "GLOBAL INDUSTRY LEADER IN SUNLESS SPRAY TANNING"—which, of course, suggests that its competitors (the non-leaders) are *also* in the business of "sunless spray tanning." (Doc. No. 52-6 at 3.) The same marketing materials, moreover, confirm that a significant amount of Sunless, Inc.'s business with its customers is done under subsidiary brand names, namely MYSTIC TAN, NORVELL, and VERSASPA. (*Id.*) If Sunless, Inc. is, in fact, an umbrella company for other, more distinctive brands, then the likelihood that it actually acquired any kind of protectable interest in SUNLESS or SUNLESSINC is even lower than it would first seem.

The bar for showing that a trademark proceeding is objectively baseless is high, and it will remain high when and if Selby must ultimately support its claim at summary judgment and/or trial. At this stage, however, it is difficult to see what else Selby could be expected to have pleaded in support of such a contention at the pleading stage. A plaintiff seeking to avail itself of the "sham litigation" exception to *Noerr-Pennington* is not required to show that the underlying litigation is nonsensical or incoherent; the plaintiff must only show that the defendant knew that "no reasonable litigant could realistically expect success on the merits." *Pro. Real Est. Invs., Inc.*, 508 U.S. at 60.

10

Selby has explained how the term "sunless" is used and why it is, if Selby's characterization is accurate, manifestly unprotected and unprotectable. Selby has backed its story up with numerous exhibits showing the term's use, including by Sunless, Inc. itself, as well as by citation to other USPTO proceedings and determinations supportive of Selby's position. Moreover, Selby has pleaded that Sunless, Inc. has a history of using intellectual property proceedings to clear the market of competitors and that it has treated the USPTO proceedings less like an earnest attempt to clarify rights and more like an opportunity to bog Selby down in additional, parallel litigation and gather intelligence it can use against Selby as a competitor.

These facts tend to show that both the alleged likelihood of confusion underlying Sunless, Inc.'s petition and the alleged fraud that it offers as an alternative basis for cancellation are beyond the realm of good-faith, supportable positions. The third supposed ground for cancellation—that the SHEERSUNLESS mark is merely descriptive—has similarly been pleaded to be baseless. The fact that a trademark contains a descriptive term does not make the trademark itself unprotectable, and Sunless, Inc. has not identified any reason why the SHEERSUNLESS registration, which uses a non-descriptive word alongside "sunless," should be canceled. *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 283 (6th Cir. 1997) ("[C]ourts must view marks in their entirety and focus on their overall impressions, not individual features.") (citations omitted).

Finally, Selby has also pleaded a plausible account of how the sham proceeding was anticompetitive within the meaning of the Sherman Act. "Anticompetitive conduct is any conduct that 'attempt[s] to exclude rivals on some basis other than efficiency.'" *Dodge Data & Analytics LLC v. iSqFt, Inc.*, 183 F. Supp. 3d 855, 865 (S.D. Ohio 2016) (quoting *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605(1985)). Selby explains that entry into the sunless

tanning booth market is expensive and that Sunless, at this point, still towers over Selby in size and market share. A large, well-financed company is naturally far better suited to withstand the expenses of frivolous litigation than a small, new one. If the large company simply swamps every budding competitor with such expenses before the competitor has had the chance to actually grow into a meaningful threat, then the larger company will be able to continue dominating the market—and charging monopoly prices while it does so.

Based on the pleaded assertions, it is, at the very least, plausible that Sunless, Inc.'s cancellation petition was a knowingly and objectively baseless attempt to further monopolize the commercial market for spray tanning booths, made with specific anticompetitive intent. Given Sunless, Inc.'s already-substantial market share and Selby's precarious status as a new market entrant, such an effort would have a dangerous probability of success. The court accordingly will deny Sunless, Inc.'s motion and will allow Selby's counterclaims to proceed.

## IV. CONCLUSION

For the foregoing reasons, Sunless, Inc.'s Motion to Dismiss Second Counterclaim (Doc. No. 56) is hereby **DENIED**.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge